IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

AAA BROTHERS HOLDINGS, LLC, *et al.*,

    Plaintiffs,

v.

PACCAR, INC. *d/b/a* PETERBILT
MOTORS COMPANY,

    Defendant *and* Third-Party Plaintiff,

v.

CASUALTY TRUCK & EQUIPMENT,
INC., *et al.*,

    Third-Party Defendants.

2:25-CV-183-Z

## MEMORANDUM OPINION AND ORDER

Before the Court is Third-Party Defendant Custom Built Mfg., LLC's ("Custom Built") Motion to Dismiss ("Motion"), filed October 7, 2025. ECF No. 16. PACCAR, Inc. ("PACCAR"), Third-Party Plaintiff, responded on October 31, 2025. ECF No. 30. Custom Built replied on November 21, 2025. ECF No. 36. The Motion is now ripe. For the reasons herein, the Motion is **GRANTED**.

### BACKGROUND

Casualty Truck & Equipment, Inc. ("Casualty") is a used truck parts dealer doing business in Texas. ECF No. 7 at 3; ECF No. 1-6 at 4. In 2021, Casualty sold parts comprising a Peterbilt semi-truck to Plaintiff AAA Brothers Holdings, LLC ("AAA Brothers"). ECF No. 7 at 3; ECF No. 1-6 at 4. Casualty had previously purchased the parts from PACCAR, after they were damaged in a fire but before they were titled. ECF No. 7 at 3; ECF No. 1-6 at 4, 17.

AAA Brothers hired movant Custom Built to convert the truck into a "wrecker" tow truck. ECF No. 7 at 4; ECF No. 1-6 at 4. Custom Built converts semi-trucks into custom built wreckers, and its only location is in Kane, Pennsylvania. ECF No. 18 at 4; *see also* ECF No. 7 at 2. A representative of Ricky's Towing of Amarillo, LLC ("Ricky's Towing"), acting on behalf of AAA Brothers, drove the truck to Custom Built's location in Pennsylvania. ECF No. 18 at 4; ECF No. 7 at 4; ECF No. 1-6 at 4. There, Custom Built "extended the frame by 42 inches" and "assemble[d] a fully operable and roadworthy" wrecker. ECF No. 7 at 4; *see also* ECF No. 18 at 4; ECF No. 1-6 at 4. When the work was complete, a representative of Ricky's Towing, again on behalf of AAA Brothers, retrieved the truck from Custom Built in Pennsylvania. ECF No. 18 at 4; ECF No. 1-6 at 4.

On December 30, 2021, AAA Brothers submitted their initial title application for the rebuilt wrecker. ECF No. 1-6 at 4. While that application was pending, they operated the wrecker under a temporary license. *Id.* at 5. In March 2025, a law enforcement investigator found a different VIN on the frame of the truck than the one AAA Brothers used to apply for title. *Id.* The State of Texas seized the truck, but a Randall County court resolved the forfeiture claim in favor of AAA Brothers. *Id.*

Thereafter, AAA Brothers purchased replacement VIN stickers from PACCAR, identifying the truck as the VIN found on the frame of the truck. ECF No. 1-6 at 5. But after reapplying for title, AAA Brothers discovered that title for that VIN was issued to PACCAR as a "nonrepairable vehicle." *Id.* at 5–6. As a result, AAA Brothers is no longer able to use the wrecker. *Id.* at 6.

AAA Brothers filed this lawsuit against PACCAR, alleging conversion and other related claims. ECF No. 1-6 at 2–10. PACCAR denied the allegations and alternatively pled affirmative defenses. ECF No. 1-8. PACCAR then removed the action to federal court under diversity jurisdiction. ECF No. 1. Subsequently, PACCAR filed a third-party complaint

2

against two third-party defendants: Casualty (the Texas used truck parts dealer) and Custom Built (the Pennsylvania truck modifier). ECF No. 7. PACCAR alleges that if there is any liability, the third-party defendants are wholly or partially responsible, and that injunctions against them will be necessary for AAA Brothers' requested relief. *Id.* at 3–8. One of the third-party defendants, Custom Built, has now filed the instant Motion to Dismiss for lack of personal jurisdiction and failure to state a claim. ECF No. 16.

### LEGAL STANDARD

A court must dismiss a claim against a defendant if personal jurisdiction is lacking. *See* FED. R. CIV. P. 12(b)(2). "When a nonresident [third-party] defendant presents a motion to dismiss for lack of personal jurisdiction, the [third-party] plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The district court can consider the contents of the entire record when ruling on a motion to dismiss for lack of personal jurisdiction. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). However, the court must accept the uncontroverted allegations in the complaint and resolve factual disputes in favor of the non-movant. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). If the court rules on personal jurisdiction without an evidentiary hearing, the non-movant must establish only a *prima facie* case of personal jurisdiction. *Sangha*, 882 F.3d at 101. "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for personal jurisdiction has been presented." *Id.* (internal marks omitted).

A federal court sitting in diversity (as here) has personal jurisdiction if the "long-arm statute" of the state where it sits allows it, and if exercising jurisdiction would not violate Fourteenth Amendment due-process protections. *See Halliburton*, 921 F.3d at 539. The Texas

3

long-arm statute extends to the limits of federal due process, so only the due-process analysis is necessary. *Id.*; *see also* ECF No. 17 at 4; ECF No. 31 at 8.

Eighty-one years later, *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) remains the canonical decision on personal jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). There, the Supreme Court held that "due process requires only" that the defendant "have certain minimum contacts" with the forum state such that exercising personal jurisdiction is "reasonable, in the context of our federal system of government" and "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316–17 (internal marks omitted).

Assessing whether a defendant has sufficient minimum contacts to justify personal jurisdiction involves analyzing "the defendant's relationship to the forum [s]tate." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). This analysis yields two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Ford Motor Co.*, 592 U.S. at 358.

General jurisdiction applies only when a defendant is "essentially at home" in the forum state. *Id.* In such cases, general jurisdiction confers personal jurisdiction for "any and all claims" brought against the defendant. *Id.* Corporations are generally regarded as "essentially at home" in their state of incorporation and the state where they have their principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Here, as the parties seem to agree, Custom Built is not "at home" in Texas, so the Court does not have general personal jurisdiction over it. ECF No. 18 at 3–4; *see also* ECF No. 31 at 9, 11.

Specific jurisdiction is different. *See Ford Motor Co.*, 592 U.S. at 359. "It covers defendants less intimately connected with a [s]tate, but only as to a narrower class of claims." *Id.* The minimum contacts required for specific personal jurisdiction are often described as

4

"purposeful availment." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy" this requirement. *Id.* Moreover, the minimum contacts cannot be random, fortuitous, or attenuated. *See Burger King Corp.*, 471 U.S. at 475. Courts discuss "foreseeability" in this context, but mere foreseeability that a product sold by a company may land in the forum state is not sufficient. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–96 (1980) ("If foreseeability were the criterion . . . [e]very seller of chattels would in effect appoint the chattel his agent for service of process."). Instead, the foreseeability that matters is "that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Id.* at 297. When a defendant does purposefully avail itself of the benefits of conducting activities in a forum state, it is subject to specific personal jurisdiction only as to claims that arise out of those contacts with the forum. *See Ford Motor Co.*, 592 U.S. at 359.

If a court lacks both general and specific jurisdiction over a defendant, it lacks personal jurisdiction and must dismiss the claims. FED. R. CIV. P. 12(b)(2). Such dismissal is without prejudice. *See ITL Int'l, Inc. v. Cafe Soluble, S.A.*, 464 F. App'x 241, 244 (5th Cir. 2012).

**PERSONAL JURISDICTION ANALYSIS**

The Court begins its analysis by discussing the two types of personal jurisdiction outlined above: *general* personal jurisdiction and *specific* personal jurisdiction. Finding that

5

the Court has neither general nor specific jurisdiction—and therefore lacks personal jurisdiction—the Court next explains why jurisdictional discovery is not necessary.

## I. General Personal Jurisdiction

The Court does not have general personal jurisdiction over Custom Built. Third-Party Plaintiff PACCAR seems to acknowledge this, focusing its arguments in response on specific jurisdiction. ECF No. 31 at 9 ("[T]his Court has *specific* jurisdiction over Custom Built." (emphasis added)); *id.* at 11 (articulating an alternative theory of the Court's *specific* jurisdiction over Custom Built). And rightfully so. As discussed above, corporate defendants are generally subject to personal jurisdiction only in their states of incorporation and principal place of business. *Daimler AG*, 571 U.S. at 139 n.19. Custom Built's undisputed affidavit establishes that Pennsylvania is both its state of incorporation and the location of its principal—in fact, *only*—place of business. ECF No. 18 at 3–4. As such, Custom Built is subject to general jurisdiction in Pennsylvania—not in Texas.

## II. Specific Personal Jurisdiction

The parties focus the bulk of their arguments on specific jurisdiction. Custom Built argues that its relevant conduct "is alleged to have occurred in Pennsylvania." ECF No. 17 at 6. After all, Ricky's Towing drove the truck to Custom Built's location in Pennsylvania, the work was performed in Pennsylvania, and Ricky's Towing picked the truck up in Pennsylvania. ECF No. 18 at 3–4.[1] In response, PACCAR argues that Custom Built agreed "to assemble and deliver a heavy-duty wrecker to Ricky's Towing, a Texas tow-truck company." ECF No. 31 at 9. Since Custom Built had "fair notice that the truck was intended to be used in Texas," PACCAR argues that it should have reasonably anticipated being subject to personal jurisdiction in a Texas court. *Id.* at 10–11.

---

[1] Custom Built's affidavit establishing this sequence of events is undisputed. *See* ECF No. 18. The Court appropriately relies on these undisputed facts. *See Sangha*, 882 F.3d at 101.

To begin, the fact that the truck is involved in a dispute in Texas is not enough to establish specific jurisdiction. Given the unique mobility of vehicles, Custom Built can obviously foresee that the wreckers they provide could land anywhere. *See World-Wide Volkswagen*, 444 U.S. at 296 n.11. But this is the type of "foreseeability" argument that the Supreme Court has squarely foreclosed. *See id.* at 295–99. In *World-Wide Volkswagen*, a car dealer selling cars in New York was not subject to personal jurisdiction in Oklahoma courts, even though it was foreseeable that cars it sold could arrive in Oklahoma. *See id.* Just so here. Custom Built is not subject to specific jurisdiction in Texas just because a wrecker they modify might land in Texas. *See id.* at 296 ("If foreseeability were the criterion . . . [e]very seller of chattels would in effect appoint the chattel his agent for service of process.").

But PACCAR's argument is somewhat different. It argues that Custom Built entered into an agreement with a Texas company to build a particular wrecker that would be used in Texas. ECF No. 31 at 9.[2] To put it in doctrinal terms: Custom Built could foresee that this *particular* wrecker would arrive in Texas, not just that *some* wrecker it sold might land here. PACCAR argues this means Custom Built could "reasonably anticipate being haled into a Texas court," at least for disputes regarding this particular wrecker. *Id.* at 11.

PACCAR's argument fails to show that Custom Built has the requisite minimum contacts required for specific jurisdiction. Custom Built's only relevant contact with Texas is through AAA Brothers (the Texas company it built the wrecker for) and Ricky's Towing (the Texas company that dropped off and picked up the wrecker in Pennsylvania). *See* ECF No. 7 at 3–5; ECF No. 18 at 4. But entering a business relationship with a Texas company does not

---

[2] PACCAR does not seem to specifically allege in its third-party complaint that Custom Built knew it was dealing with a Texas tow-truck company. *See generally* ECF No. 7. But neither does Custom Built deny this in reply after the argument was raised in PACCAR's response brief. *See generally* ECF No. 36. Considering the posture of this Motion to Dismiss, the Court assumes that Custom Built knew it was dealing with a Texas company, and that the wrecker was to be used in Texas.

establish the minimum contacts required for personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). And neither does selling goods to a Texas buyer. *See Loumar, Inc. v. Smith*, 698 F.2d 759, 763 (5th Cir. 1983). In fact, the Fifth Circuit in *Loumar* found that even shipping goods to Texas was not sufficient to establish the minimum contacts required for specific jurisdiction. *Id.* Here, Custom Built's contacts with Texas are even more attenuated than the defendant in *Loumar*. Custom Built did not ship the wrecker to Texas; Ricky's Towing picked up the wrecker from Custom Built's location in Pennsylvania. ECF No. 18 at 4. Since personal jurisdiction was lacking in *Loumar*, it is certainly lacking here. Custom Built's connection to Texas is only established through the unilateral activity of the company that hired it (AAA Brothers) and the company that delivered then retrieved the wrecker (Ricky's Towing). This unilateral activity is not sufficient to show the "purposeful availment" required to find specific jurisdiction. *See Hanson*, 357 U.S. at 253.[3]

PACCAR's case citations are not persuasive. PACCAR primarily relies on two unreported cases from other federal district courts. ECF No. 31 at 9–11. In *Ellison v. Daldalyan*, a judge in the Southern District of Texas found that the court had personal jurisdiction over an out-of-state defendant who performed automobile repairs for a Texas resident. No. 4:22-CV-2271, 2023 WL 2277127, at *7 (S.D. Tex. Feb. 28, 2023). But in that case, the *defendant* "intentionally reached out to a Texas resident with the purpose of

---

[3] PACCAR argues that the connection to Texas is not based on the "unilateral" activities of others because Custom Built agreed to perform work for a Texas company. ECF No. 31 at 11–12. But the location of a counterparty to a business transaction is exactly the kind of connection that courts have found is unilateral. *See Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) (finding that even the "shipment of goods to the forum at the instigation of the resident plaintiffs . . . de[es] not constitute the minimum contacts necessary" for personal jurisdiction).

establishing a business relationship with him." *Id.* Here, there is no allegation that Custom Built affirmatively "reached out" to AAA Brothers and/or Ricky's Towing to solicit their business. *See* ECF No. 36 at 4 ("Custom Built did not reach out to Plaintiffs."). Similarly, in *Gardner v. Forest River, Inc.*, a judge in the Western District of Texas found the court had personal jurisdiction over an out-of-state defendant who sold a motor home to Texas residents intended to be used in Texas. No. 5:17-CV-018, 2017 WL 2869432, at *3–4 (W.D. Tex. July 5, 2017). But in that case, the defendant flew the Texas residents to its out-of-state location to solicit their business. *Id.* at 4. There is no similar allegation in this case. *See* ECF No. 18 at 4. And to the extent some of the reasoning in these cases does support PACCAR's position, the Court finds them unpersuasive for the reasons discussed above.[4]

PACCAR also argues that the Court has personal jurisdiction over Custom Built under a "stream-of-commerce" theory. Its arguments are essentially a recasting of the arguments already discussed. *Compare* ECF No. 31 at 9 ("[T]his Court has specific jurisdiction over Custom Built based on its agreement to assemble and deliver a heavy-duty wrecker to . . . a Texas tow-truck company."), *with id.* at 11 ("It was abundantly foreseeable to Custom Built that the wrecker would be used in Texas."). "Stream of commerce" is generally invoked in products liability cases. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011). And even under the stream-of-commerce theory, "the defendant's contacts must be more than . . . the unilateral activity of another party or third person." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). Here, as discussed above, Custom Built's only contact with Texas is through the unilateral activity of AAA Brothers and Ricky's Towing. Moreover, the stream-of-commerce theory does not

---

[4] PACCAR also cites a case in which the Texas Supreme Court found personal jurisdiction over an out-of-state company. *See generally Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009). That case involved the defendant's purchase of real property interests in Texas, which established minimum contacts. *Id.* at 339–40. No real property interests are at issue here.

establish specific jurisdiction when only one sale is at issue. *See id.* at 178 ("[A] single isolated sale is not an adequate basis for personal jurisdiction." (internal marks omitted)). Here, the record shows only one sale to a Texas customer. *See* ECF No. 7 at 3–5. PACCAR nowhere alleges that Custom Built has ever sold another wrecker to a Texas customer. *See generally* ECF Nos. 7, 31.

PACCAR has not made a *prima facie* showing of specific jurisdiction. Because the Court lacks both general and specific jurisdiction, it lacks personal jurisdiction over Custom Built.

### III. Request for Jurisdictional Discovery

PACCAR requests an opportunity to conduct jurisdictional discovery should the Court find it has not made a *prima facie* showing of personal jurisdiction. ECF No. 31 at 12–13. That request is denied.

"A district court has broad discretion in all discovery matters." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal marks omitted). "Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024). However, "vague assertions that additional discovery will produce needed, but unspecified facts" are not sufficient to allow additional discovery. *Id.*

PACCAR argues that discovery is necessary to supplement the factual record on several fronts, but its arguments are unpersuasive. First, it argues that discovery into "the business relationship between Custom Built and Plaintiffs" and "Custom Built's performance

10

of its contract with Plaintiffs" is necessary. ECF No. 31 at 13. PACCAR does not specify what facts this discovery would reveal that would alter the analysis. It seems to suggest that discovery might reveal that Custom Built knew it was dealing with a Texas company (*see id.* at 13 n.13), but the Court assumed that Custom Built knew Ricky's Towing was a Texas company for the purposes of this Motion. PACCAR also asserts that additional discovery is necessary to discern if Custom Built ever served other Texas customers. ECF No. 31 at 13. In particular, PACCAR notes that Custom Built maintains a website advertising its services that is accessible to residents nationwide, including Texas. *See* ECF No. 32. But it is well established that passive advertising—including internet advertising—that is accessible in a forum state is not sufficient to establish jurisdiction in that state. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) ("[W]here a defendant merely establishes a passive website that does nothing more than advertise on the Internet . . . personal jurisdiction is not appropriate."). PACCAR has—at most—alleged that additional discovery will produce some unspecified facts that will establish jurisdiction, which is not sufficient to require such discovery. *See Pace*, 93 F.4th at 902. Additional discovery is unwarranted here.

### FAILURE TO STATE A CLAIM

Because the Court finds that Custom Built should be dismissed for lack of personal jurisdiction, it does not address the parties' arguments regarding dismissal for failure to state a claim.

### CONCLUSION

For the reasons stated above, the Court finds that it lacks personal jurisdiction over Custom Built. Accordingly, Custom Built's Motion to Dismiss (ECF No. 16) is **GRANTED**. Custom Built is **DISMISSED** from this action without prejudice under Federal Rule of Civil Procedure 12(b)(2).

11

**SO ORDERED.**

May 15, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE